**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESTER CHRISTOPHER WILLIAMS | : | |
| | : | |
| Appellant | : | No. 949 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000132-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESTER CHRISTOPHER WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1064 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000242-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESTER CHRISTOPHER WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1065 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000303-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S24043-26

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>LESTER WILLIAMS</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 1066 WDA 2025</td></tr>
</table>

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000199-2024

BEFORE:   STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: August 11, 2026**

Appellant, Lester Christopher Williams a/k/a Lester Williams,[1] appeals
*nunc pro tunc* from the judgment of sentence entered in the Court of Common
Pleas of Cambria County following his open guilty pleas in four separate lower
court docket numbers: CP-11-CR-0000132-2024 ("132-2024"), CP-11-CR-
0000242-2024 ("242-2024"), CP-11-CR-0000303-2024 ("303-2024"), and
CP-11-CR-0000199-2024 ("199-2024").  After our careful review, we affirm.

The relevant facts and procedural history are as follows: On April 17,
2024, at lower court docket number 132-2024, the Commonwealth charged
Appellant with theft by unlawful taking, 18 Pa.C.S.A. § 3921(a), in connection
with a home invasion during which an envelope of cash containing $3,000.00

---

[*] Former Justice specially assigned to the Superior Court.

[1] In the trial court, Appellant's middle name was not included in the caption
for the appeal docketed at 1066 WDA 2025, and, thus, for the sake of
consistency, we have not amended the caption in this regard.

was stolen.[2]  On April 23, 2024, at lower court docket number 199-2024, the Commonwealth charged Appellant with receiving stolen property, 18 Pa.C.S.A. § 3925(a), in connection with Appellant's possession of a stolen vehicle.[3]  On May 13, 2024, at lower court docket number 242-2024, the Commonwealth charged Appellant with unauthorized use of a motor vehicle, 18 Pa.C.S.A. § 3928(a), in connection with Appellant's unauthorized use of a company's truck.[4]

On May 28, 2024, the trial court held a hearing at which Appellant, represented by counsel, entered an open guilty plea to the charges above at docket numbers 132-2024, 199-2024, and 242-2024. During the guilty plea hearing, Appellant indicated he was never treated for a mental illness, was not under the influence of drugs or alcohol, and reviewed the written guilty

---

[2] At docket number 132-2024, the Commonwealth also charged Appellant with burglary, receiving stolen property, and criminal mischief.  *See* 18 Pa.C.S.A. §§ 3502, 3925, and 3304, respectively.  However, pursuant to the parties' plea agreement, these charges were *nolle prossed*.

[3] At docket number 199-2024, the Commonwealth also charged Appellant with theft by unlawful taking, theft from a motor vehicle, theft of property lost by mistake, public drunkenness, possession of drug paraphernalia, and possession of a controlled substance.  *See* 18 Pa.C.S.A. §§ 3921, 3934, 3924, 5505; 32 P.S. § 780-113(a)(32), (16), respectively.  However, pursuant to the parties' plea agreement, these charges were *nolle prossed*.

[4] At docket number 242-2024, the Commonwealth also charged Appellant with theft by unlawful taking, receiving stolen property, and criminal trespass. *See* 18 Pa.C.S.A. §§ 3921, 3925, and 3503, respectively.  However, pursuant to the parties' plea agreement, these charges were *nolle prossed*.

plea agreements, as well as his waiver of rights, with his attorney. N.T., 5/28/24, at 1-3. The trial court relevantly indicated the following:

> Looks like you're pleading guilty to theft [in docket number 132-2024], that's graded as a felony of the third degree. The maximum sentence I could give you on that would be up to seven years in prison and a $15,000.00 fine. Pleading guilty to receiving stolen property [in docket number 199-2024], again, felony of the third degree, it carries the same sentence. And unauthorized use of automobiles or other vehicles [in docket number 242-2024], a misdemeanor of the second degree. The maximum sentence that could be imposed is up to two years in prison and a $5,000.00 fine.

*Id.* at 4.

Appellant acknowledged his understanding of the potential sentences and confirmed he wished to plead guilty to the charge at each docket number. *Id.* at 5. The Commonwealth then stated the facts underlying Appellant's criminal cases. *Id.* at 5-6. Relevantly, for docket number 132-2024, the Commonwealth stated "officers observed the rear door of [Ryan Adams'] residence partially open and the glass was broken. Also, the victim indicated that $3,000.00 in cash in a manilla envelope was taken. [Appellant] was interviewed, and he did acknowledge taking that money from the residence." *Id.* at 5. For docket number 199-2024, the Commonwealth indicated a witness observed Appellant driving a stolen vehicle, and for docket number 242-2024, Appellant admitted that he took Ryan Adams' company truck without permission. *Id.* at 6. The trial court asked Appellant if he admitted to the facts as stated by the Commonwealth, and Appellant specifically answered, "Yes." *Id.*

- 4 -

Appellant confirmed that, other than the plea agreement, no one promised him anything or threatened him; he was pleading guilty of his own free will; and he was satisfied with his attorney. *Id.* The trial court ordered the preparation of a presentence investigation report and scheduled a sentencing hearing for August 8, 2024.

Meanwhile, on May 20, 2024, at lower court docket number 303-2024, the Commonwealth filed an Information charging Appellant with theft from a motor vehicle, 18 Pa.C.S.A. § 3934(a), in connection with Appellant removing approximately $16.00 worth of United States currency from a vehicle without the owner's permission.[5] On July 30, 2024, Appellant, represented by counsel, entered an open guilty plea to the charge. Again, Appellant confirmed he was never treated for a mental illness, was not under the influence of drugs or alcohol, and reviewed the written guilty plea agreement, as well as his waiver of rights, with his attorney. N.T., 7/30/24, at 3. The trial court informed Appellant: "You're pleading guilty to theft from a motor vehicle, graded as a misdemeanor of the third degree. The maximum sentence the court could impose in your case would be up to one year in prison and a $2,500.00 fine." *Id.* at 4.

---

[5] At docket number 303-2024, the Commonwealth also charged Appellant with receiving stolen property and loitering at night. *See* 18 Pa.C.S.A. §§ 3925 and 5506, respectively. However, pursuant to the parties' plea agreement, these charges were *nolle prossed*.

Appellant acknowledged his understanding of the potential sentence and confirmed he wished to plead guilty to the charge at docket number 303-2024. *Id.* at 5. The Commonwealth then stated the facts underlying Appellant's criminal case. Specifically, the Commonwealth stated: "[Appellant] entered a 2020 Hyundai Tucson and removed approximately $16.00 worth of United States currency in coins." *Id.* The trial court asked Appellant if he admitted to the facts as stated by the Commonwealth, and Appellant specifically answered, "Yes." *Id.*

Appellant confirmed that, other than the plea agreement, no one promised him anything or threatened him; he was pleading guilty of his own free will; and he was satisfied with his attorney. *Id.* at 6. The trial court ordered the preparation of a presentence investigation report and indicated Appellant would be sentenced on August 8, 2024, along with his prior three cases *supra* for which he entered guilty pleas.

On August 8, 2024, Appellant, represented by counsel, proceeded to a sentencing hearing at which the trial court acknowledged the presentence investigation report. Appellant's counsel confirmed that the presentence investigation report contained accurate information; however, counsel wished to note that, after the completion of the presentence investigation report, Appellant gained employment at a restaurant earning $10.00 per hour. N.T., 8/8/24, at 3. Appellant's counsel reminded the trial court that, for each case, Appellant took responsibility and cooperated with the police. *Id.*

Appellant's counsel indicated: "[H]is guidelines on the highest offense is six to nine months, for another is four to seven, and then one to four, and then 12 months' probation. However, on all of these offenses, where there is jail time in the guidelines, there is the restrictive conditions probation notation." *Id.* at 3-4. Consequently, Appellant's counsel requested the trial court impose a sentence of restrictive condition probation. *Id.* at 4. Counsel noted that he was not "necessarily seeking a mitigated sentence, just a sentence of restrictive conditions probation in lieu of incarceration so that [Appellant] is able to maintain employment." *Id.*

Moreover, Appellant's counsel noted that Appellant disputed the restitution amount for docket number 132-2024. *Id.* In this vein, counsel indicated Appellant told him that "the amount taken was closer to $1,800.00 as opposed to $3,000.00." *Id.* Appellant's counsel suggested that Appellant needs to continue working because he is the sole caretaker for his wife, who is ill. *Id.*

Appellant made a statement on his own behalf. Specifically, Appellant stated:

> I apologize sincerely. And I apologize to the Courts. I made a mistake. I am trying to correct it. I am doing everything possible to stay on the right path. I hope that with your assistance, it continues to keep me on the right path. Thank you, Your Honor.

*Id.* at 5.

At this point, one of Appellant's victims, Ryan Adams, made a statement to the trial court. Mr. Adams indicated that he gave Appellant a job; namely,

- 7 -

he hired Appellant to paint his home. *Id.* at 6. He discovered Appellant snooping inside of the house, and one day, Appellant came to paint while under the influence of drugs or alcohol. *Id.* Mr. Adams testified that he "let [Appellant] go." *Id.* Thereafter, Appellant broke into Mr. Adams' house, damaged two doors, and removed money. *Id.* Mr. Adams testified he had to fix the doors, including ordering a new door, painting, replacing broken glass, and replacing screens. *Id.* Mr. Adams informed the trial court that he had security cameras, which caught Appellant "in the act." *Id.*

Mr. Adams explained that his wife and his son are worried that Appellant will return to their house. *Id.* at 7. Mr. Adams testified that, after the home invasion, Appellant was arrested, so Mr. Adams told his wife and son that they were safe. *Id.* However, a few weeks later, Appellant was released from prison, and Appellant then went to Mr. Adams' business and took one of his company trucks without authorization. *Id.* The police informed Mr. Adams that Appellant used his truck to steal other people's vehicles, and the truck was later recovered in the City of Johnstown. *Id.* Mr. Adams testified that, after the home invasion, he tried to "move on;" however, after Appellant committed a second crime against him, it left him angry and afraid Appellant will come back to his house. *Id.*

The trial court indicated that it reviewed Mr. Adams' wife's written impact statement. *Id.* The Commonwealth noted that it was requesting $3,000.00 in restitution for the Adams family. *Id.*

At this point, Appellant asked to address the court.  Appellant stated:

I was listening to Mr. Adams speak about the screen door.  The screen door is glass.  There was no screen.  It was glass.  The other glass door he is talking about, is a square pane about like this [size].  No need to fix the whole thing for that little pane. All you do is you take it out and put the glass back, and put the putty around it. Let's not fabricate the story. I take responsibility for what I did that was wrong and stupid. But don't lie and try to…that is not okay.

*Id.* at 8.

The trial court then stated:

In fashioning your sentence, I have taken into consideration the Sentencing Code, the Sentencing Guidelines, the statements in court today by both [Appellant] and the victims in this case.  I reviewed the information in the presentence investigation report, and the victim's impact statement that was submitted by the victim.  Based on all of that, I will sentence you at Count 2, at case 132-2024, you are ordered to pay the costs of prosecution, the sum of $300 for the use of Cambria County, and direct restitution of $3,000 to Ryan Adams[.]  I will direct you undergo a term of imprisonment of not less than four months nor more than 23 months in a state correctional facility.  I find you ineligible for RRRI, and I will give you credit for time served as allowed by law.

To Count 2 of 199-2024, it is [the] sentence of the court [that] you pay the costs of prosecution [and] the sum of $300 for the use of Cambria County.  Undergo imprisonment for not less than six months nor more than 23 months in a state correctional facility.  I find you ineligible for RRRI.  You will be given credit as allowed by law.  This is consecutive to Count 2 of 132-2024.

To Count 3 of 242-2024, it is the sentence of the Court you pay the costs of prosecution [and] the sum of $300 for the use of Cambria County.  That you undergo a term of imprisonment of not less than one month nor more than 12 months in a state correctional facility.  You are ineligible for RRRI, and [you] will be afforded credit as allowed by law.  This is concurrent to Count 2 of 132-2024.

\*\*\*

To the case at Count 1 of 303-2024, you are ordered to pay the costs of prosecution, the sum of $300 for the use of Cambria County, [and] direct restitution of $16.00 to Robert Rock[.] I'll direct that you go for a term of imprisonment of not less than one month nor more than 12 months in a state correctional facility. I find you are ineligible for RRRI. And this will be concurrent to Count 2 of 132-2024.

*Id.* at 8-11. The trial court provided Appellant with his post-sentence and appellate rights.

On August 13, 2024, Appellant filed a timely counseled petition for modification of sentence at each docket number.[6] Therein, Appellant averred that his aggregate sentence for all four cases was unduly harsh and excessive in light of his cooperation with the police. Further, Appellant averred that his "incarceration in a State Correctional Institution where the Sentencing Matrix recommends either County Confinement or County Probation is effectively an aggravated range sentence, and the [trial] court failed to state the cause for this on the record at the time of sentencing." Appellant's Motion, filed 8/13/24, at 2.

On August 29, 2024, the trial court held a hearing on Appellant's petition for modification of sentence at which Appellant and his counsel appeared. During the hearing, Appellant's counsel argued that Appellant's aggregate sentence for all four cases (10 months to 46 months in a State Correctional Institution) was unduly harsh and excessive. N.T., 8/28/24, at 2. Appellant's

_____

[6] Appellant filed an identical petition for modification of sentence at each docket number.

- 10 -

counsel noted that Appellant took responsibility for his actions, and at the time of sentencing, Appellant was gainfully employed. *Id.* Further, Appellant's counsel contended:

> [APPELLANT'S COUNSEL]: I raised some issues about the actual nature of the 8th Edition Sentencing Guidelines and the ranges in which his guideline ranges fell. However, in my conversations with [Appellant], based on what he's telling me about what he's being told by the jail, I think it may actually almost be moot at this point, Your Honor. My understanding is based on the amount of time credit he had on these cases and essentially how close he is to its minimum. It sounds like there was a determination within the county jail to essentially keep him in county despite the Order to send him to a State Correctional Institution just because I think his out date is actually relatively close. I believe [Appellant] said, February the 2nd.
>
> [APPELLANT]: The 3rd.
>
> [APPELLANT'S COUNSEL]: The 3rd. So, I did raise a point that based on what's in the actual guidelines, I believe at the worst it should have been a county sentence, but it sounds like the county jail may have kind of taken care of that for me. But, again, Your Honor, I would just note that [Appellant] did have employment available to him. He does have a very lengthy criminal history, but I will note that some of that is rather stale. And, again, he did take responsibility for his actions.

*Id.* at 2-3.

Appellant advised the trial court that, during his incarceration, he has completed several programs, including anger management. *Id.* at 4. He indicated that he would like to get back to his employment at the restaurant to earn money for his wife, who has multiple sclerosis. *Id.* Appellant acknowledged that his criminal actions were "wrong;" however, he noted that he apologized to the victims, accepted full responsibility, and wanted to "make amends." *Id.* He asked the trial court to show him leniency. *Id.*

- 11 -

The trial court took the matter under advisement, and by order entered on August 30, 2024, the trial court denied Appellant's petition for modification of sentence. The trial court's order provided Appellant with his appellate rights.

On September 25, 2024, at each docket number, Appellant filed a timely, counseled notice of appeal. However, on December 17, 2024, since counsel failed to file the relevant docketing statements, this Court dismissed Appellant's appeals. On or about June 27, 2025, Appellant filed a timely *pro se* PCRA[7] petition at each docket number, and counsel was appointed. By order entered on June 30, 2025, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*.

On July 24, 2025, Appellant filed a separate counseled notice of appeal at each docket number, and all Pa.R.A.P. 1925 requirements have been met. On December 11, 2025, counsel filed a motion seeking the consolidation of all four appeals, and this Court granted the motion.

On appeal, Appellant presents the following issues in his "Statement of Questions Presented" (verbatim):

> A. Whether the sentencing court erred and abused its discretion by failing to consider the evidence of his rehabilitative needs, mental health needs, and protection of the public, and other mitigating factors as set forth in 42 Pa.C.S.A. § 9721(b), resulting in a manifestly excessive aggregate sentence?
>
> B. Whether the sentencing court abused its discretion in failing to consider [Appellant's] financial circumstances and ability to pay

---

[7] Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545.

in setting [Appellant's] fines, resulting in an excessive amount of fines?

C.      Whether the sentencing court erred by failing to determine [Appellant] was RRRI eligible at the time of sentencing?

D.      Whether the sentencing court erred by failing to state a reason for its sentence of total confinement on the record at the sentencing hearing?

E.      Whether the sentencing court erred by failing to cite statutory authorization for its sentencing scheme?

Appellant's Brief at 5 (suggested answers omitted).

Initially, we note that, as to Issue C, Appellant indicates in his appellate brief that he is withdrawing the issue. *See* Appellant's Brief at 18.  He specifically states that he "recognizes the assault conviction on his record would render him RRRI ineligible," as was determined by the trial court at the time of sentencing.  *See id.* Since Appellant presents no argument, we decline to address the issue further.

In Issues A, D, and E, Appellant presents challenges to the discretionary aspects of his sentence.[8]  The issues are intertwined, and, thus, we address

_____

[8] Given that Appellant entered guilty pleas pursuant to plea agreements, we examine whether Appellant may challenge the discretionary aspects of his sentence.  This determination "depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa.Super. 1994).

A defendant may enter an open or a negotiated guilty plea. An open guilty plea "is one in which there is no negotiated sentence." *Commonwealth v. Tirado*, 870 A.2d 362, 363 n.1 (Pa.Super. 2005). In other words, if "there have been no sentencing restrictions in a plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing." *Dalberto*, 648 A.2d at 20.  However, if a plea agreement involves an

*(Footnote Continued Next Page)*

- 13 -

the issues together. Specifically, Appellant claims the trial court's sentence does not reflect a consideration of Appellant's rehabilitative needs, the protection of the public, or the mitigating factors as set forth in 42 Pa.C.S.A. § 9721(b). Appellant claims the trial court abused its discretion in failing to reference specifically Subsection 9721(b) and/or in failing to state adequate reasons on the record for the sentence imposed.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing issues are meritless.

---

agreement to a particular penalty, "there is no authority to permit a challenge to" the imposition of that penalty. **Id.** (citation omitted).

In the case *sub judice*, the record reveals no agreement as to Appellant's sentence, and, thus, Appellant is not precluded from challenging the discretionary aspects of sentencing.

- 14 -

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Further,

> "In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Commonwealth v. Mouzon*, 812 A.2d 617, 620–21 (Pa. 2002); 42 Pa.C.S.A. § 9721(b). The sentencing guidelines are not mandatory, and sentencing courts retain "broad discretion in sentencing matters[.]" *Id.*

*Commonwealth v. Antidormi*, 84 A.3d 736, 760–61 (Pa.Super. 2014) (citations, quotation marks, and quotations omitted).

This Court has stated:

> In imposing sentence, the trial court is required to consider

- 15 -

the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the presentencing report; thus properly considering and weighing all relevant factors.

A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question. When a trial court imposes a sentence that is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.

*Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa.Super. 2022) (internal citations, quotations and original brackets omitted; emphasis added).

A presentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to [its] intention of engaging in an effort of legal purification, [our Supreme Court] state[d] clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the presentence investigation report, the sentencing court's discretion should not be disturbed. This is particularly true [] in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (emphasis added).

In the case *sub judice*, the trial court relevantly indicated the following:

- 16 -

A review of the August 8, 2024, sentencing transcript reveals that, prior to sentencing, counsel for [Appellant] generally requested a sentence of "probation with restrictive conditions." N.T., 8/8/24, at 4. In doing so, counsel noted [Appellant's] cooperation with the police, his taking of responsibility for his actions, and his recent acquisition of employment with [a restaurant] at $10.00 per hour. *Id.* at 3. Additionally, counsel advocated that, while the guidelines call for six to nine months incarceration, four to seven months incarceration, one to four months incarceration, and twelve months' probation; all also denote "restrictive conditions." *Id.* Further, counsel indicated that [Appellant] disputed the $3,000.00 restitution, believing same to be "closer to $1,800.00," and emphasized that "[Appellant] would not be able pay same if incarcerated." *Id.* at 4.

In response, the Commonwealth requested restitution of $3,000.00 at [docket] number 132-2024, and to supplement a written Victim Impact Statement, presented the testimony of victim Ryan Adams, who, on behalf of himself, his wife, and his son, stated [in depth] the impact that these cases had on his family.

\*\*\*

By his own words, [Appellant's] issues implicate the discretionary aspects of his sentence….[P]rior to sentencing, the [trial] court had the benefit of a presentence investigation report[.]

\*\*\*

In addition to review of the presentence investigation report, prior to the imposition of sentence, the court placed the rationale for its sentence on the record, in accordance with statutory mandate. *See* 42 Pa.C.S.A. § 9721(b) (in imposing a sentence, the court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Appellant], and state its reason for the sentence on record."). This included consideration of testimony from the victim, Mr. Ryan Adams; a Victim Impact Statement submitted by Mr. Adams' wife; [Appellant's] mitigation testimony; the arguments of counsel; the Sentencing Code; and the Sentencing Guidelines. N.T., 8/8/24, at 8-9. Same encompassed attentiveness to the victim's expressed fear, in light of [Appellant's] twice-victimization, including intrusion into their home.

Additionally, the aforementioned materials contained the following, all of which the [trial] court considered prior to sentencing: [Appellant] pled guilty to four separate cases, two of which, again, involved the Adams family with the second case occurring within a very short period after [Appellant's] release from pre-trial incarceration; [Appellant's] prior record score of 3 under the [] Guidelines; the fact that [Appellant] previously served State incarceration time; and [Appellant's] statements to the court at the sentencing hearing. Further, the court was aware of the statutory maximums on all four counts, as well as the following guidelines:

- 132-2024, Count 2, Theft by Unlawful Taking-Movable Property (F3): 4-7 (RC);
- 199-2024, Count 2, Receiving Stolen Property (F3): 6-9 (RC);
- 242-202[4], Count 3, Unauthorized Use of Automobiles and Other Vehicles (M2): 1-4 (RC); and
- 303-2024, Count 1, Theft from a Motor Vehicle (M3): 12 P/ 1 RC.

Overall, [Appellant] received a standard range guideline sentence. The incarceration imposed was well within the court's discretion, as was the decision to run two sentences consecutively, and two concurrently. Thus, [the trial court] deems [Appellant's] allegation of an unduly harsh sentence non-meritorious.

As to [Appellant's] contention that the court deviated from the "sentencing recommendation" of probation with restrictive conditions, [Appellant] ignores that his sentencing guidelines, *supra*, also provide for, at the court's sole discretion, incarceration. 24 Pa. Code § 303(a)(5). Again, the [trial] court ultimately imposed a standard range guideline sentence, which was not [in the] aggravated [range]. Nor did the court depart from the guidelines, which, in appropriate circumstances, is also within the [trial] court's exclusive purview. *See* 24 Pa. Code § 303(a)(4). Overall, the [trial] court believes the record fully supports the [trial] court's sentence, and that [Appellant's] issues lack merit.

Trial Court Opinion, filed 11/3/25, 4-8 (emphasis omitted).

We find no abuse of discretion. In addition to its explanation set forth in

its opinion, as indicated *supra*, in sentencing Appellant, the trial court stated

- 18 -

on the record during the sentencing hearing the following:

> In fashioning your sentence, I have taken into consideration the Sentencing Code, the Sentencing Guidelines, the statements in court today by both [Appellant] and the victims in this case. I reviewed the information in the presentence investigation report, and the victim's impact statement that was submitted by the victim.

N.T., 8/8/24, at 8.

Based on the aforementioned, we find no merit to Appellant's claim that the trial court failed to consider Appellant's rehabilitative needs, the gravity of the offense, or the need to protect the community. The trial court considered the testimony and arguments from the sentencing hearing, as well as the information in the presentence investigation report and mitigation evidence. We note that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to the sentence already imposed." **See Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa.Super. 2011).

Furthermore, regarding Appellant's claim that the trial court did not state adequate reasons on the record for the sentence, we note the trial court specifically referenced its review of the presentence investigation report, the victim impact statements, the Sentencing Code, the sentencing guideline ranges, and Appellant's statements to the trial court. Based on the aforementioned, we conclude the trial court's statements substantially conform with the requirements of 42 Pa.C.S.A. § 9721(b). Having been fully informed by the presentence investigation report, the sentencing court's

discretion should not be disturbed. *See Devers*, *supra*. Moreover, as indicated *supra*, despite Appellant's contention to the contrary, in sentencing Appellant, the trial court was not required to specifically reference the statute in question. *See Conklin*, *supra*. Thus, Appellant is not entitled to relief on his discretionary aspects of sentencing claims.

We now turn to Appellant's Issue B; that is, whether the trial court erred in failing to consider Appellant's financial circumstances and ability to pay in setting Appellant's fines ($300.00 for each docket number for a total of $1,200.00 in fines). Appellant argues that, pursuant to 42 Pa.C.S.A. § 9726(c), the trial court abused its discretion in sentencing him to pay fines for each docket number absent evidence that Appellant had the financial resources to pay such fines.

In the case *sub judice*, at docket number 132-2024, Appellant pled guilty to theft, a third-degree felony; at docket number 199-2024, Appellant pled guilty to receiving stolen property, a third-degree felony; at docket number 242-2024, Appellant pled guilty to unauthorized use of automobiles or other vehicles, a second-degree misdemeanor; and at docket number 303-2024, Appellant pled guilty to theft from a motor vehicle, a third-degree misdemeanor. As part of his sentence, at each docket number, the trial court ordered him to pay a fine of $300.00.

Section 1101(3) of the Sentencing Code states that a defendant "may be sentenced to pay a fine not to exceed [$15,000.00]" upon conviction of a

third-degree felony. 18 Pa.C.S.A. § 1101(3). Further, a defendant "may be sentenced to pay a fine not to exceed $5,000.00, when the conviction is of a misdemeanor of the second degree[,] [and] $2,500.00, when the conviction is of a misdemeanor of the third degree." 18 Pa.C.S.A. § 1101(5), (6). Thus, Section 1101 limits the fine that may be imposed upon conviction of a third-degree felony, a second-degree misdemeanor, and a third-degree misdemeanor; however, the statute but does not mandate the imposition of a fine. *See Commonwealth v. Martin*, 205 A.3d 1247, 1252 (Pa.Super. 2019) (stating Section 1101 defines the maximum fines which "may" be imposed).

Thus, at first blush, since the foregoing language is all presented in terms of a trial court's discretion, it would appear that Appellant is challenging the trial court's discretion when it ordered Appellant to pay a $300.00 fine at each docket number. However, Section 9726 imposes a critical legal limitation on that discretion:

> **(c) Exception.–**The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
> > (1) the defendant is or will be able to pay the fine; and
> >
> > (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

42 Pa.C.S.A. § 9726(c) (bold in original).

Our Supreme Court has held that, when the trial court imposes a non-mandatory fine, as it did in the case *sub judice*, an appellant's claim that there

- 21 -

is no evidence of his ability to pay such fines presents a legality of sentencing claim. ***Commonwealth v. Ford***, 217 A.3d 824 (Pa. 2019). "When the legality of a sentence is at issue, our standard of review over such questions is *de novo* and our scope of review is plenary." ***Id.*** (citation and original quotation marks omitted).

In ***Ford***, ***supra***, our Supreme Court examined Section 9726 and held that "trial courts are without authority to impose non-mandatory fines absent record evidence that the defendant is or will be able to pay them." ***Ford***, 217 A.3d at 829. However, this Court has held that such an evidentiary basis exists where the trial court has the benefit of a presentence investigation report that incudes a defendant's "educational history, employment history, and existing assets." ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa.Super. 2013) (*en banc*). ***See Commonwealth v. Baker***, No. 295 MDA 2023, *5 (Pa.Super. filed 12/13/23) (unpublished memorandum) (finding the trial court had an evidentiary basis to impose non-mandatory fines based on the defendant's presentence investigation report, and holding "the ***Ford*** Court did not impose a requirement that the trial court hold a hearing to determine the defendant's ability to pay.").[9]

In the case *sub judice*, the trial court confirmed its review of Appellant's

---

[9] ***See*** Pa.R.A.P. 126(b) (indicating unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). We find ***Baker*** to be persuasive.

presentence investigation report before it imposed the non-mandatory fines. The presentence investigation report revealed that Appellant earned his GED in 1989; he became certified in business proposal writing in 2003 from the Pennsylvania State University; and he became certified in horticulture in 2007. Moreover, the presentence investigation report revealed that, aside from hypertension, Appellant has no health problems, he is in good mental health, and he has no addiction to alcohol. Appellant reported using marijuana, but he indicated he had not used it since 2023.

Further, the presentence investigation report set forth Appellant's work history, including that he was employed as late as 2023 at Shop Rite in New Jersey. While Appellant was unemployed and seeking SNAP benefits when the presentence investigation report was prepared, Appellant confirmed during the sentencing hearing that he subsequently found employment at a restaurant earning $10.00 per hour, and, thus, at the time of the sentencing hearing, he was actively employed. The presentence investigation report indicates that Appellant has no monthly financial obligations.

Based on the aforementioned, including the presentence investigation report and Appellant's declaration of employment during the sentencing hearing, we conclude there is an adequate evidentiary basis for the trial court's imposition of the fines. *See Boyd*, *supra*. We note that "[i]mposition of a fine is not precluded merely because the defendant cannot pay the fine immediately or because he cannot do so without difficulty." *Commonwealth*

*v. Thomas*, 879 A.2d 246, 264 (Pa.Super. 2005) (citation omitted). Thus, the fact Appellant may not be able to immediately pay the fine due to his incarceration for the offenses at issue, does not prevent the trial court from imposing the fine after receiving evidence about his ability to pay. *See id.* Therefore, we find Appellant is not entitled to relief.

For all of the foregoing reasons, we affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/11/2026